IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

William Washington, #257151, ) CIVIL ACTION NO. 9:10-3211-JFA-BM
Plaintiff,
v.
Leroy Cartledge, Warden; Dan Patterson; N. Barber, Chaplin; and Bobby Hankerson, Chaplin,
Defendants.

**REPORT AND RECOMMENDATION**

This action was filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections (SCDC), alleges violations of his constitutional rights by the named Defendants.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on June 23, 2011. As the Plaintiff is proceeding pro se, a Roseboro order was issued by the Court on June 27, 2011, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case.

Plaintiff thereafter filed a response in opposition to the Defendants' motion on August 1, 2011. Defendants' motion is now before the Court for disposition.[1]

[1]This case was automatically referred to the undersigned United States Magistrate Judge for (continued...)





**Background and Evidence**

Plaintiff alleges in his verified complaint[2] that his due process rights were violated during prison disciplinary proceedings which resulted in his conviction on charges of exhibitionism and public masturbation on four (4) different occasions. With respect to a disciplinary hearing conducted on July 11, 2008, Plaintiff alleges he was denied his right to twenty-four hour notice and was denied his right to confront and cross-examine witnesses. Plaintiff alleges that he grieved this matter in Grievance No. MCCI 0635-08.[3] With respect to a disciplinary hearing conducted on December 17, 2008, Plaintiff alleges he was denied his right to confront and cross-examine his accuser, an Officer Green. Plaintiff alleges he grieved this conviction in Grievance No. MCCI 1082-08. With respect to a disciplinary hearing conducted on August 27, 2009, Plaintiff alleges he was denied the right to confront and cross-examine witness Lt. Rice. Plaintiff alleges that he grieved this conviction in Grievance No. MCCI 0691-09. Finally, with respect to a disciplinary hearing conducted on May 14, 2010, Plaintiff alleges that the hearing proceeded in violation of the twenty-four hour notice requirement. Plaintiff alleges that he grieved this conviction in Grievance No.

---

[1](...continued)
all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this motion is dispositive, this Report and Recommendation is entered for review by the Court.

[2]In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.

[3]While Plaintiff has submitted copies of the other grievances cited hereinabove, a copy of this grievance is not in the record. It further appears that this is not the correct grievance number, and that the correct number is actually Grievance No. MCCI 0638-08. See, discussion, infra.





MCCI 0557-10. Plaintiff has attached copies of his grievances (except for Grievance No. MCCI 0635-08) to his verified Complaint.

Plaintiff also alleges that following these convictions, he was placed in a heightened security status and was required to wear a pink jumpsuit, was not allowed to attend regular communal services, that he was required to attend counseling classes, that he was improperly denied visits and cell phone usage, and was otherwise improperly maintained in segregation. Plaintiff seeks monetary damages for each due process violation, as well as damages for having been placed in segregation and for violation of his right to free exercise of his religion and for being required to wear a pink jumpsuit. See Generally, Verified Complaint with attached Exhibits.

In support of summary judgment in the case, the Defendant Leroy Cartledge has submitted an affidavit wherein he attests that he is the Warden at the McCormick Correctional Institution (MCCI), where Plaintiff is housed. Cartledge attests that he has attached copies of relevant portions of Plaintiff's Inmate file, disciplinary history, and grievance file, which support the statements made in his affidavit, to his affidavit as Exhibit A. Cartledge attests that Plaintiff was admitted into the SCDC on March 25, 1999 after receiving a life sentence for armed robbery. Cartledge attests that Plaintiff has been housed primarily at MCCI since February 21, 2002, during which he has incurred convictions for sexually related disciplinary offenses, including five convictions for exhibitionism and public masturbation since June 2008. Cartledge attests that inmates confined to disciplinary detention are assigned yellow colored jumpsuits, and that upon release from disciplinary detention, inmates who are convicted of public masturbation or exhibitionism are assigned pink colored jumpsuits for a period of ninety days for their first conviction and one year for any subsequent convictions. See also, Exhibit B to Cartledge Affidavit





(SCDC Inmate Disciplinary Policy).

Cartledge attests that Disciplinary Hearing Officers (DHO) are independent quasi-judicial officers who make decisions regarding inmate disciplinary infractions, and that he does not influence DHO decisions with respect to disciplinary charges or the sanctions to be imposed upon a conviction. However, inmates may appeal their disciplinary convictions and/or sanctions to his office pursuant to SCDC policy. Cartledge attests that when an inmate appeals a disciplinary conviction and/or sanction, he reviews the conviction for procedural errors and/or deviations from SCDC policy, as well as for plain errors. He then makes a decision and provides a written response to the inmate informing him of his decision, as well as that the inmate may appeal his decision to the SCDC Division of Operations. Cartledge attests that an inmate must appeal his decision to the Division of Operations in order to receive a final agency decision. Further, in cases such as the Plaintiff's, inmates can also appeal their disciplinary conviction to the South Carolina Administrative Law Court. Cartledge attests that Plaintiff has not had the disciplinary convictions at issue in this law suit overturned on appeal.

Cartledge also attests that the SCDC has an established inmate grievance system, under which inmates may file a written Step 1 grievance regarding conditions of their confinement. If an inmate is dissatisfied with the response to his Step 1 grievance, he may appeal the decision by filing a Step 2 grievance. The response to the Step 2 grievance is the Agency's final decision on the matter, although again in certain circumstances inmates may appeal the decision on their Step 2 grievance to the South Carolina Administrative Law Court. Cartledge attests that he has reviewed Plaintiff's grievance file, and that while it appears that Plaintiff has unsuccessfully appealed the disciplinary convictions he complains of in his Complaint, he has not filed any grievances relating





to the conditions of confinement claims asserted in the Complaint. Specifically, Plaintiff has not filed any grievances relating to his allegations of discrimination, denial of freedom of religion, and segregation that are discussed in the Complaint.

Cartledge also attests that in an effort to provide rehabilitation to inmates who commit sexually related disciplinary infractions, and in an effort to reduce the number of such infractions, he developed a six week class in conjunction with Chaplin Hankerson that focuses on changing behavior. This class is offered to inmates who have committed sexually related disciplinary infractions, and inmates who successfully complete the class can have their disciplinary sanctions reduced. Cartledge attests that these behavior changing classes were started in September 2009, and that Plaintiff was one of the inmates who was allowed to take the class. Cartledge attests that Plaintiff did not successfully complete the class, although he did restore some of Plaintiff's privileges after Plaintiff had completed the course, and informed Plaintiff that he could retake the class in March 2010. Plaintiff subsequently was convicted of another disciplinary infraction of exhibitionism and public masturbation in May 2010. Cartledge attests, however, that Plaintiff has recently retaken the behavior changing class, and this time he successfully completed the course resulting in a restoration of privileges to him, including removal of the pink jumpsuit.

With respect to Plaintiff's claim that he was segregated and denied access to religious services, Cartledge attests that pink jumpsuit inmates attend a separate religious service on Friday mornings which is essentially the same as the standard Sunday morning service, except that the Friday morning service does not have female visitors and is led by a male Chaplin. Cartledge attests that this Friday morning service was instituted as a result of previous incidents where inmates in pink jumpsuits acted inappropriately while in the presence of females at the standard religious service.





With respect to Plaintiff's complaint that he was discriminated against because his current booking photograph shows him in a pink jumpsuit, Cartledge attests that a review of the SCDC website shows that there is no explanation stating why Plaintiff is pictured in a pink jumpsuit, so unless Plaintiff has himself explained to family members or other members of the public why he was wearing a pink jumpsuit, no one who views Plaintiff's booking photograph would know what he was convicted of to be assigned a pink jumpsuit. In any event, Cartledge attests that Plaintiff has not filed any grievances relating to his booking photograph. See generally, Cartledge Affidavit, with attached Exhibits.

As an attachment to his response to the Defendants' motion for summary judgment, Plaintiff has submitted an un-notarized declaration in which he, inter alia, concedes that he did not file any grievances relating to his conditions of confinement claims, but "submits that from the due process violations the Defendants actions was continuous . . . ." Plaintiff also argues that he had "informally" complained about these matters and the "high official[s] were fully aware of situation." See generally, Plaintiff's un-notarized Declaration. Plaintiff also submitted two other affidavits (Court Docket Nos. 15, 16) wherein he reiterates the allegations of his Complaint, and again argues that he sufficiently exhausted his administrative remedies with respect to his conditions of confinement claims because he "informally" pursued these matters.

**Discussion**

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the





pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

**I.**

**Due Process Claims**

With respect to Plaintiff's claim for damages relating to his disciplinary hearings, in order to recover damages for an allegedly unconstitutional conviction, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 Plaintiff must ordinarily prove that the conviction or sentence at issue has been reversed on direct appeal, expunged by executive order, declared invalid by state tribunal authorized to make such determinations, or called into question by a Federal Court's issuance of a writ of habeas corpus. Heck v. Humphrey, 512 U.S. 477, 486-487 (1994). Although Heck involved a conviction in a court of law, the holding in Heck is equally applicable to cases which implicate the validity of an internal prison disciplinary conviction and sanction. Cf. Edwards v. Balisok, 520 U.S. 641, 648 (1997)[Applying Heck to claim challenging a disciplinary proceeding.]; see Stone-Bey v. Barnes, 120 F.3d 718, 721 (7th Cir. 1997)["The 'conviction' in the prison disciplinary sense is the finding of guilt on the disciplinary





charge, and if success on the Plaintiff's Section 1983 claim necessarily would imply the invalidity of that finding, then Heck bars the claim until such time as its requirements are satisfied"].

Defendants argue that a ruling in Plaintiff's favor on his due process claims will necessarily imply the invalidity of the results of his prison disciplinary proceedings, and that since Plaintiff has presented no evidence to show (or even alleged) that the results of these disciplinary proceedings have been invalidated, Plaintiff's claims for damages with respect to these disciplinary convictions must be dismissed. However, it is not clear to the undersigned that a finding in Plaintiff's favor with respect to whether he received twenty-four hours notice of the charge prior to the hearing, which is included in his claims with respect to his convictions on July 11, 2008 and May 14, 2010, would necessarily call into question the validity of his underlying conviction on the charges from those proceedings. Therefore, although the undersigned agrees with the Defendants that the remainder of Plaintiff due process claims are subject to dismissal under Heck, the undersigned finds and concludes that Heck does not bar consideration of Plaintiff's alleged twenty-four hour violation claims with respect to those two convictions. Nonetheless, even with respect to those two claims, Plaintiff has failed to present evidence sufficient to create a genuine issue of fact as to whether a constitutional violation occurred.

First, it should be noted that while Plaintiff is entitled to a hearing and/or other procedural safeguards for protected interests, such as the loss of good time credits, he is not actually entitled to a due process hearing every time action is taken to control his behavior. See generally, Wolff v. McDonnell, 418 U.S. 539, 557 (1974); Sandin v. Connor, 515 U.S. 472, 478 (1995)[The "Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner"]. Here, while Plaintiff was subjected to certain



restrictions as a result of his disciplinary convictions, such as loss of visitation privileges and the like, Plaintiff has no general constitutional right to placement in any particular prison or to certain privileges, nor does he have any constitutional right to placement in any particular custody classification. See Slezak v. Evatt, 21 F.3d 590 (4th Cir. 1994) [the Constitution vests no liberty interest in inmates retaining or receiving any particular security or custody status as long as the conditions or degree of confinement is within the sentence imposed]; Neal v. Shimoda, 131 F.3d 818, 828 (9th Cir. 1997) ["[A] prisoner does not have a constitutional right to be housed at a particular institution,..., [or] to receive a particular security classification...."]; Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) ["[A] prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation."]; Ordaz v. Lynaugh, 1994 WL 144882, at * * 2 (5th Cir. 1994)["Wolff . . . does not determine the procedural requirements for disciplinary action such as restriction of commissary privileges."]; Bazzetta v. McGinnis, 430 F.3d 795, 802-05 (6th Cir. 2005)[regulation banning virtually all visitation for inmates found guilty of two or more violations of major misconduct charge of substance abuse was not a dramatic departure of a typical and significant hardship in relation to ordinary incidents of prison life necessary to implicate a state-created liberty interest, and thus did not rise to level of egregious conduct necessary to violate the guarantees of Fourteenth Amendment's procedural due process clause]; Tanney v. Boles, 400 F. Supp.2d 1027, 1040 (E.D. Mich. 2005)[inmate's loss or restriction of telephone privileges for disciplinary reasons is not considered an atypical significant hardship, even when the disciplinary charges are allegedly false, and therefore does not implicate a liberty interest protected by due process]; Papadakis v. Director, No. 08-670, 2010 WL 1753358 at * 2 (E.D.Tex. Apr. 8,





2010)["[B]eing placed in disciplinary confinement, losing commissary and property privileges for thirty days, and remaining at the same time earning class are not sanctions which impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."] (quoting Sandin, 515 U.S. 472).

While some courts have held that placement in segregation may alone be sufficient to trigger constitutional due process safeguards under some cirucmstances; cf. Marion v. Columbia Correctional Institution, 559 F.3d 693, 697-698 (7th Cir. 2009); Luna v. Pico, 356 F.3d 481, 487-488 and n. 3 (2d Cir. 2004); Plaintiff has still failed to present any evidence to show a constitutional violation. With respect to his conviction of May 14, 2010, which he grieved in Grievance No. MCCI 0557-10, the only evidence Plaintiff has presented is a copy of his grievance, which was denied. The decision noted on his Step 2 Grievance Form reads, in part; "A review of your appeal reveals that you received twenty-four (24) hour notice prior to the hearing . . . ." Hence, this exhibit is not evidence to support a finding that any twenty-four violation occurred. With respect to Plaintiff's July 11, 2008 conviction, while Plaintiff did not submit any evidence with respect to this conviction, among the Defendants' exhibits is a copy of Grievance No. MCCI 0638-08, which is apparently the grievance to which Plaintiff intended to refer (not 635). The Step 2 response to this grievance also reads, in part: "A review of your appeal reveals that you received twenty-four (24) hour notice prior to the hearing . . . ." Again, this exhibit does not provide support for Plaintiff's claim.

The Defendants have also submitted a copy of the Disciplinary Report and Hearing record for the May 14, 2010 hearing, which shows that Plaintiff received a notification of the charges against him at 9:50 a.m. on May 13, 2010, and that the hearing was held the following day, May 14, 2010, with the hearing time noted as being 9:25 a.m. (twenty-five minutes short of a full twenty-four





hours). The Defendants exhibits also include a copy of the Disciplinary Report and Hearing Record for the July 11, 2008 hearing, which reflects that Plaintiff was notified of the charges against him at 11:55 a.m. on July 10, 2008, and the hearing was held the following day, July 11, 2008, beginning at 11:59 a.m. (initialed). See Defendants' Exhibits. Hence, this evidence does not show that a twenty-four hour violation occurred with respect to the July 11, 2008 hearing. With respect to the May 14, 2010 hearing, assuming the Court were to find for purposes of summary judgment that a technical violation of the twenty-four hour notice requirement occurred because the disciplinary hearing began twenty-five minutes before the expiration of a full twenty-four hours, Plaintiff has still presented no evidence whatsoever to show that his *constitutional rights* were violated as a result of this technical violation, as a full 24-hour notice period is not mandated by the Constitution. Simmons v. Hobart, No. 05-510, 2005 WL 2704904, at * 3 (W.D.Wisc. Oct. 19, 2005)[Twenty-four hours notice not required to satisfy due process].[4]

In the prison disciplinary setting, an inmate is entitled to only a minimal standard of due process, which is satisfied where a prisoner receives advance written notice of the charges. Wolff, 418 U.S. at 563-576. It is readily apparent from the evidence presented to this Court that Plaintiff received adequate advance written notice of the charges against him, and the fact that (with respect to the May 14, 2010 hearing) the Defendant may have technically violated the full twenty-

---

[4]The twenty-four hour violation is the only violation alleged in Plaintiff's Complaint with respect to this hearing. See Verified Complaint, Claim 4 relating to Grievance No. MCCI 0557-10. While Plaintiff apparently grieved other matters with respect to this hearing (see Grievance Form exhibit), none of those other matters are alleged to have had anything to do with the timing of the hearing, nor has Plaintiff presented any evidence to show that the timing of this hearing had anything to do with the other matters concerning the conduct of this hearing as were set forth in his Grievance form.





four hour requirement provided by the SCDC Inmate Disciplinary Policy does not, by itself, amount to a constitutional violation. Simmons, 2005 WL 2704904, at * 3; Keeler v. Pea, 782 F.Supp. 42, 44 (D.S.C. 1992) [violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983]); see also Scott v. Hamidullah, No. 05-3027, 2007 WL 904803 *5 n.6 (D.S.C. Mar. 21, 2007) (citing Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)); Johnson v. S.C. Dep't of Corrections, No. 06-2062, 2007 WL 904826 at *12 (D.S.C. Mar. 21, 2007) ["Plaintiff's allegation that Defendants did not follow their own policies fails, as the failure of prison officials to follow their own policies or procedures, standing alone, does not amount to a constitutional violation."] (citing Riccio, 907 F.2d at 1469 [if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue]).

Therefore, the Defendants are entitled to summary judgment on Plaintiff's due process violation claims.

**II.**

**Conditions of Confinement Claims**

With respect to Plaintiff's conditions of confinement claims, the Defendants argue, inter alia, that these claims should be dismissed for failure of the Plaintiff to exhaust his administrative remedies prior to filing this lawsuit. Pursuant to 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this Title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Through the enactment of this statute, Congress has mandated exhaustion regardless of the relief offered through administrative procedures.





Booth v. Churner, 532 U.S. 731, 741 (2001); see Porter v. Nussle, 534 U.S. 516 (2002); Larkin v. Galloway, 266 F.3d 718 (7th Cir. 2001) [exhaustion required even though plaintiff claimed he was afraid]; see also Claybrooks v. Newsome, No. 00-7079, 2001 WL 1089548 (4th Cir. Sept. 18, 2001) (unpublished opinion) [applying Booth v. Churner to affirm district court's denial of relief to plaintiff]. Accordingly, before Plaintiff may proceed on these claims in this Court, he must first have exhausted the administrative remedies that were available to him at the prison.

The Defendants have the burden of showing that Plaintiff failed to exhaust his administrative remedies. See Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 683 (4th Cir. 2005) [inmate's failure to exhaust administrative remedies is an affirmative defense to be both pled and proven by the Defendant]; Jones v. Bock, 127 S.Ct. 910 (2007). To meet this burden, the Defendants have submitted an affidavit from Cartledge, who attests that Plaintiff failed to file grievances with respect to any of his conditions of confinement claims prior to filing this lawsuit. The Defendants have also submitted copies of Plaintiff's grievance file, which fails to include any grievances on these issues. For his part, Plaintiff does not contest that he did not pursue the formal prison grievance procedure with respect to these claims prior to filing this lawsuit, and indeed the only grievances Plaintiff references in his Complaint are the four grievances he filed with respect to his due process claims. See Complaint, at ¶ II. Instead, Plaintiff argues that, since all of the conditions of confinement claims he asserts were only incurred because of his allegedly improper disciplinary convictions, he should be able to pursue those claims as well. However, that is simply not the law. See Porter, 534 U.S. 516 [exhaustion required for all actions brought with respect to prison conditions]; Hyde v. South Carolina Dep't of Mental Health, 442 S.E.2d 582, 583 (1994) ["Where an adequate administrative remedy is available to determine a question of fact, one must





pursue the administrative remedy or be precluded from seeking relief in the courts"]; Jones v. Smith, 266 F.3d 399 (6th Cir. 2001) [exhaustion required even though plaintiff claimed futility].[5]

Therefore, based on the material and arguments presented to this Court, the undersigned finds that the evidence is sufficient to meet the Defendants burden of establishing Plaintiff's failure to exhaust his administrative remedies with respect to these claims. Plaintiff's conditions of confinement claims should therefore be dismissed, without prejudice. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000)["It is beyond the power of this court - or any other to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."](quoting Beeson v. Fishkill Corr. Facility, 28 F.Supp. 2d 884, 894-895 (S.D.N.Y. 1998)); see also Jacobs v. Pennsylvania Dep't of Corrections, 148 Fed. Appx. 107 at * * 2 (3d Cir. 2005)[Case dismissed for failure to exhaust where although Plaintiff alleged that he had documents to show exhaustion, he never filed the documents and made no other attempt to support his bare assertion]; Harvey v. City of Philadelphia, 253 F.Supp.2d 827, 829 (E.D.Pa. 2003) [Summary judgment granted where Plaintiff claimed to have exhausted administrative remedies, but did not present any evidence to challenge defendants' evidence that he did not pursue his administrative remedies].

---

[5]Plaintiff may be arguing that inmate request forms he submitted to prison officials discussing his complaints along with other informal complaints satisfy the exhaustion requirements. However, requests to staff forms are not grievances, and Plaintiff being dissatisfied with responses to his inmate request forms does not constitute the exhaustion of the prison grievance process. Rather, to exhaust his administrative remedies, Plaintiff would have had to have pursued grievances concerning theses issues if he did not receive the responses(s) he desired to his request forms. Davis v. Minthorn, No. 05-236, 2006 WL 2222700 (E.D.Tenn. Aug. 2, 2006)[Submission of an inmate grievance form not sufficient to exhaust grievance remedy].





**Conclusion**

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment with respect to Plaintiff's due process claims challenging whether he received twenty-four hours notice of his disciplinary hearings be **granted**, with prejudice. The remainder of Plaintiff's disciplinary hearing due process claims should be **dismissed**, without prejudice, pursuant to Heck v. Humphrey, while Plaintiff's conditions of confinement claims should be **dismissed**, without prejudice, for failure to exhaust his administrative remedies.

The parties are referred to the Notice Page attached hereto.

Bristow Marchant
United States Magistrate Judge

August 12, 2011
Charleston, South Carolina





**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).